## KOPPALA AND LAMPE v. STATE.

APPEAL AND ERROR—MOTION FOR NEW TRIAL—ASSIGNMENT OF ER-
ROR — EXCEPTIONS — BILL OF EXCEPTIONS — STENOGRAPHER'S TRAN-
SCIPT OF EVIDENCE—INSTRUCTIONS—SUFFICIENCY—CRIMINAL LAW—
COAL MINES—ENTERING UNSAFE PLACE IN MINE—INFORMATION—
OBJECTIONS — PRESUMPTIONS — STATUTES — CONSTITUTIONALITY —
TITLE AND SUBJECT—DELEGATION· OF POWER.

1. Upon an assignment of error that the court erred in overruling
the appellant's motion for new trial all the grounds properly
set up in the motion are entitled to consideration, unless
jurisdiction for that purpose fails because of a defective
record.

2. To authorize the consideration on error of an exception to
the overruling of a motion for new trial in a criminal case
on the ground that the verdict is not sustained by sufficient
evidence, or is contrary to law, all the evidence must be
embraced in the bill of exceptions.

3. Alleged error in the admission of evidence, to be available on
error, must be based upon an exception taken at the time of
the ruling complained ·of, and brought into the record by
bill of exceptions.

4. Where the official stenographer's certified transcript of the
evidence is merely attached to the bill of exceptions follow-
ing the judge's authentication, but is not referred to in the
bill, nor in any way identified or authenticated thereby, so
as to make it a part thereof, the evidence shown only by
such transcript cannot be regarded as embraced in the bill.

5. A bill of exceptions properly allowed and signed containing
the motion. for new trial and showing the ruling thereon
and the exception thereto brings such motion, ruling and
exception into the record, but neither the motion nor its
recitals are evidence of the alleged erroneous rulings upon
which it is based.

6. Errors which should be, but are not, incorporated in the bill
of exceptions, other than by mere recital in the motion for
new trial, cannot be considered.

7. An exception to the overruling of the motion for new trial
cannot be taken as a substitute for an exception to a ruling
required to be taken at the time and in the course of the
trial, and upon which the motion is based.

8. In the absence of the evidence, an exception to an instruction
complained of on error presents only the question whether

the instruction would be proper upon any state of facts provable under the issues.

9. The word "intentionally" used in a statute describing an act constituting a misdemeanor imports knowledge of the nature of the act at the time it was done; hence, where the word was employed in the first part of an instruction describing the offense, the use of words of similar import in the latter part applying the law to the particular case is *held* to have been sufficient.

10. In a prosecution for an alleged violation of the statute (R. S. 1899, Sec. 2572) making it a misdemeanor for any miner, workman or other person to intentionally enter any place in a coal mine against caution, or disobey any order given in carrying out the provisions of the chapter governing the operation of coal mines, whereby the lives or health of persons or security of the mine or machinery is endangered, it is to be presumed on error, in the absence of the evidence, that the latter was sufficient to show a doing of the act with knowledge of the danger, and therefore intentionally.

11. An act was entitled, "An act creating the office of State Inspector of Coal Mines, fixing said inspector's salary and prescribing his duties, also providing for the proper ventilation of coal mines and for other purposes, and providing for appropriating moneys for a contingent fund for said office." Section 7 of the act made certain intentional acts of a miner, workman or other person endangering the lives or health of persons or security of mine or machinery punishable as a misdemeanor. *Held,* (1) that Section 7 aforesaid (R. S. 1899, Sec. 2572) is not void as beyond the scope of the title of the act; (2) that the title embraced but one general subject. (Laws 1890-1891, Ch. 80; R. S. 1899, Secs. 2562-2589.)

12. The statute which punishes as a misdemeanor the intentional entering of any place in a coal mine against caution, or disobedience of any order given in governing the operation of coal mines, whereby the lives or health of persons or security of the mine or machinery is endangered, is not unconstitutional as being a delegation of legislative power.

13. An information under Section 2572, R. S. 1899, charging the offense of intentionally entering an unsafe place in a coal mine against caution, thereby endangering the lives and health of persons therein and the security of the mine and

machinery, should allege such descriptive matter as will inform the accused of the nature of the offense and enable him to prepare to meet the same; and that requirement will be satisfied generally when, upon conviction or acquittal, the result could be pleaded in bar of another prosecution for the same offense.

14. An information charging such offense is not insufficient because not alleging the names of the persons whose lives and health were endangered, where it appears that the two persons jointly charged were employed in the mine, and the security of the mine and machinery was alleged to have been endangered.

15. An objection to an information going only to the form and manner of charging the offense, and not to the substance, must be taken advantage of by motion to quash, or it will be waived.

ON PETITION FOR REHEARING.

1. The intent to endanger life or health is not an element of the offense of entering a place in a coal mine against caution, but it consists of the intentional doing of an act with knowledge that thereby life or property will be endangered.

2. It is usually sufficient to charge a purely statutory offense in the language of the statute defining it.

[Decided April 15, 1907.]
[Rehearing denied February 10, 1908.]          (89 Pac., 576.)

ERROR to the District Court, Carbon County, HON. DAVID H. CRAIG, Judge.

Information under Section 2572, Revised Statutes, 1899, charging Nels Koppala and Isaac Lampe with the offense of intentionally entering an unsafe place in a certain coal mine (Hanna Mine No. 1, Carbon County) against the caution of the mining boss, thereby endangering the lives and health of persons employed in the mine and the security of the mine and machinery therein. The material facts are stated in the opinions. The information is quoted in the opinion upon the petition for rehearing. After a conviction the accused brought error.

*John H. Murphy* and *Chatterton, Preston & Coolidge,* for plaintiffs in error.

A criminal complaint or information which does not state facts sufficient to constitute a crime will not support a judgment and its defects cannot be cured by the introduction of testimony. (1 Bish. New Cr. Pro., Secs. 123, 795; People v. The State, 109 Ind., 545; Com. v. Doyle, 110 Mass., 103; State v. Watkins, 101 N. C., 702; State v. Levy, 119 Mo., 434; Fletcher v. State, 12 Ark., 169. It was incumbent upon the prosecutor to allege what the "caution" consisted of—to set out the order itself. The names of the persons who might be injured should have been stated. Why the place in the mine was unsafe should be stated. That the act was done "intentionally" should have been alleged. ."Wilfully" and "wrongfully" do not supply the omission.

To state the nature and cause of an accusation as required by Section 10, Article 1, of the constitution, every ingredient of the crime should be set out. (U. S. v. Cruikshank, 92 U. S., 542; Schneider v. People, 30 Colo., 493.) The indictment must state explicitly and directly every fact and circumstance necessary to constitute the offense, whether such fact or circumstance is an external event or an intention or other state of mind, or circumstance of aggravation affecting the legal character of the offense, and the charge must always be sufficient to support itself; and it cannot be helped out by evidence at the trial, or be aided by argument and inference. (1 Hawk. P. C., Chap. 25, p. 40; Com. v. Newburyport Br., 9 Pick., 142; U. S. v. Cruikshank, 92 U. S., 542; Com. v. Whitney, 5 Gray, 85; State v. Perry, 2 Bailey (S. C.), 17; Com. v. Dougherty, 103 Mass., 443; People v. Heffron, 53 Mich., 527; State · v. Record, 56 Ind., 107; State v. Fitts, 44 N. H., 621; Fench v. State, 64 Miss., 461; State v. Mace, 76 Me., 64; People v. O'Callagan (Ida.), 9 Pac., 415; U. S. v. Reese, 92 U. S., 225; People v. Dumar, 106 N. Y., 502; 1 Chitty, C. R. Law, 172; Com. v. Dudley, 6 Leigh., 613;

Com. v. Shaw, 7 Metc., 52; State v. Bushey, 84 Me., 459; State v. Haven, 9 Atl., 841; 10 Ency. Pl. & Pr., 487; Cannon v. U. S., 116 U. S., 55; Evans v. U. S., 153 U. S., 584; U. S. v. Peterson, 55 Fed., 605; U. S. v. Cook, 84 U. S., 17.) Under these authorities, too, if a statutory offense is not fully, directly and without uncertainty defined in the statute, an indictment will not be sufficient in the language of the statute. (U. S. v. Carll, 105 U. S., 611; U. S. v. Simmons, 96 U. S., 360; Pettibone v. U. S., 148 U. S., 197; Re Greene, 52 Fed., 104; 2 Story's Const., 1785.)

If no offense within the jurisdiction of the court is stated, such a defect being fatal at any stage, it is not waived by failure to take advantage thereof at any preliminary stage of the proceedings. (People v. Ross, 103 Cal., 425; Reyes v. State, 34 Fla., 181; State v. Garvey, 11 Minn., 154; Newcomb v. State, 37 Miss., 397; State v. Nunley, 185 Mo., 182; People v. Gregg, 59 Hun, 107; 8 Pl. & Pr., 201.) Under this statute, the circumstances under which the acts were done should have been stated. (O'Donnel v. People, 110 Ill. App., 250.)

The information is insufficient because the name of the mining boss and the name or names of any individual or individuals in the mine against whom any act of the defendants might work an injury, is not stated nor any reason given for such omission. (Jacobs v. State, 35 S. W. (Fla.), 65; Black v. State (Tex.), 79 S. W., 308; McCloy v. State, 178 Mo., 348; Clark's Cr. Pro.; pp. 339, 340, and cases cited.)

While the statute under which the information was drawn does not make any of the things prohibited therein a crime, unless done with evil intent, yet the information nowhere alleges that the defendants intentionally did any act; likewise instruction No. 1 is erroneous, in that the court omitted telling the jury that the defendants could not be found guilty without it appearing from the evidence, beyond a reasonable doubt, that they intentionally did some-

thing condemned by the statute. (Com. v. Percy, 2 Allen, 173.) The property of a corporation must be laid in the corporation. (People v. Bogart, 32 Cal., 248; McCowen v. State, 58 Ark., 17.) No legal proof was made of the corporate existence of Hanna Coal Company No. 1, nor was it stated in the information under the laws of what state such corporation was organized. The fore part of the statute enumerates a number of things, the doing of any one of which will constitute a misdemeanor, and unquestionably the Legislature under the police powers has a right to say that the omission of certain acts productive of injury to life or property shall be a crime, but it is not within its province to say that the order of A., B., or C., when disobeyed, shall constitute a crime. The language of the statute, to-wit. "or enter any place of the mine against caution, * * * or do any act whereby the lives and health of persons or the security of mines and machinery are endangered, shall be deemed guilty of a misdemeanor, etc.," is so indefinite and uncertain that they do not, under all established rules, meet the requirements of a criminal statute. It will be noted that the statute does not attempt to make the entrance of a mine against caution a crime, but to enter any place in a mine. With this power in the hands of a mining boss to make a man a criminal if his caution is disobeyed, he could indefinitely keep every miner in the underground workings prisoners, or make criminals of them, for all he would have to do would be to "caution" them not to enter any of the passageways leadings to the surface of the earth, and if they disobeyed that order, it being against caution, they would be guilty of a misdemeanor. The statute is, therefore, unconstitutional. (U. S. v. Blasingame, 116 Fed., 654; U. S. v. Eaton, 144 U. S., 677; U. S. v. Maid, 116 U. S., 650.) Again, consider that part of the statute which says "or do any other act whereby the lives or the health of persons or mine or machinery is endangered," and it will be perceived that it is wholly uncertain, and inasmuch as no act is mentioned the doing of which is declared to be

criminal, it must necessarily vitiate the statute. (State v. Mann., 2 Ore., 238; Cook v. State, 26 Ind. App., 278; Augustine v. State, 41 Tex. Cr., 59.)

It is a canon of law that an act innocent in itself or not *malum in se,* cannot be made a crime by any power except a legislative body. This statute leaves it to one man to give an order prohibiting something that before was perfectly innocent and because of a disobedience of such order the act becomes criminal. This cannot be done. (State v. Burge, 95 Wis., 390; Schaelzein v. Cavaniss, 135 Cal., 466; Louisville & N. R. Co. v. Com., 99 Ky., 132; Dowling v. Ins. Co., 92 Wis., 63; Anderson v. Fire Co., 59 Minn., 152; O'Neil v. Ins. Co., 26 L. R. A., 715; Club v. Alpena, 99 Mich., 117.)

It is clear to be seen that there is nothing in the title relative to the subject matter of the section. So this section of the act never could have been valid, and, though incorporated into the Revised Statutes, it would have no more force or effect than if the compilers had inserted language concerning any other subject which had never been before the Legislature. (People v. Fleming, 7 Colo., 230; *In re* Breene, 14 Colo., 401.)

*W. E. Mullen,* Attorney General, for the State.

Exceptions to an indictment or information must usually be made before trial on the general issue. If they are formal, or such as may arise upon a demurrer, plea in abatement or motion to quash, they must generally be made and adjudicated preliminary to the trial, and if not thus made, they will, in contemplation of law, be waived. (10 Ency. Pl. & Pr., 564.) Objections to indictments cannot be raised by objecting to the introduction of evidence at the trial. (U. S. v. Harmon, 45 Fed., 414; State v. Risley, 72 Mo., 616; Rice v. State, 3 Kan., 168; People v. Apple, 7 Cal., 290.) The demurrer to the information was on grounds subject only to a motion to quash. (Sec. 5326, R. S. 1899; Wilbur v. Ter., 3 Wyo., 268; State v. McCaffrey, 40 Pac., 63 (Mont.) ; Miller v. State, 3 Wyo., 657.)

The offense is charged in the exact language of the statute, and in terms sufficiently minute. The nature of the caution given defendants is properly a matter of evidence only. It is true that the name of the particular person who gave the order was not stated, but he is referred to as the "mining boss," not one of the mining bosses; we think the allegation amounts to a statement that there was but one official of that kind employed about the mine. The name of the official having been stated, and there being but one official of the kind employed at the mine, certainly makes as clear a statement as if the name of the person who was serving in that official capacity had been stated. The defendants well knew who was meant and referred to in the information, and were not misled in their defense. It is alleged that the mine entry was an unsafe portion of the mine. This would certainly appear to be a fair statement of an existing reason for the giving of the order of caution. It is not permissible under the rules of criminal pleading to allege facts which are properly matters of evidence, and it would have been improper to have inserted in the information a detailed statement as to just why that portion of the mine was unsafe, or what combination of circumstances or conditions had led the mining boss to conclude that the mine was unsafe. Unsafe conditions in a coal mine are not capable of exact knowledge at all times. It is a hazardous and dangerous calling under all circumstances, and even ordinary care for the safety of the lives or the health of persons employed in such places, or the security of the mining property, or the machinery used in the mine, requires the very highest degree of precaution from those in charge. As a matter of fact, it is not very material whether the mine was, or was not, in an unsafe condition. It will be recalled that Section 2572 of the Revised Statutes makes the disobedience of any order given in carrying out the provisions of the chapter, of which said section is a part, a misdemeanor. Inasmuch as Section 2572 refers to other provisions of the chapter of which it is a part, it is necessary to examine the

entire chapter in order to get an intelligent understanding of the scope and effect of our legislation on this subject. The police power of the state has no limitation or restrictions in the enactment of laws for the protection of life, liberty and property. (Hawthorne v. People, 50 Am., 610.) Or the prevention of calamities. (16 Kan., 573; St. La. v. Schlemmer, 10 L. R. A., 135; Carthage v. Frederick, 10 L. R. A., 178.) A wrongful intent is not made an element of the offense by the section, and need not, therefore, be alleged or proven. The information charges the offense in the language of the statute, and is, therefore, sufficient. (*In re* McDonald, 33 Pac., 18 (Wyo.) ; *In re* Wright, 134 U. S., 136.)

The information alleges the coal mine to be the property of the Union Pacific Coal Company, a corporation. This was sufficient without alleging the name of the state under the laws of which the corporation was organized. (1 Bish. Cr. Proc., Sec. 482; McCarney v. People, 83 N. Y., 408; Murphy v. State, 36 O. St., 628; Burke v. State, 34 O. St., 79; 5 Ency. Pl. & Pr., 70, 71.) In a case like this it is not necessary to state the names of third persons liable to be injured. (State v. Warner, 109 Mo., 430; State v. Van Doren, 109 N. C., 864; People v. Van Alstine, 57 Miss., 69; State v. McKinley, 82 Ia., 445.)

The statute does not delegate a power to create a crime by a declaration, order or caution made or given on the part of anyone. The truth is that it is made unlawful for any miner to enter any mine,, or a part of a mine, generating fire-damp, until it has been examined by the fire boss and by him reported to be safe. (Sec. 2565, R. S. 1899.) It was not the order of the mining boss that had converted the act of entering into an offense against the law. Coal mines must of necessity be entered by miners and workmen, and other persons, in order to carry on the business of coal mining, but owing to the peculiar nature of the business and hazards that attend it, there are times when the presence of gas, floods, fire-damp or other dangerous circumstances,

render the condition of the mine unsafe. The law, therefore, places upon those in charge of coal mines a duty, the neglect or omission of which is made a misdemeanor punishable by heavy fine. (Secs. 2567, 2584.) .

Among the duties enumerated are the giving of orders for the purpose of guarding the safety of persons and property in and about coal mines. It is for the purpose of enforcing an obedience of such orders that the law makes it a misdemeanor to disregard a caution given by a person in authority. There is no delegation of arbitrary authority whatever. Only the performance of a prescribed duty on the part of the mining boss, or other official in charge, and an obedience of orders on the part of the person or persons to whom the order is given, is required. The object of the statute could not be accomplished in any other way. (Com. v. Hutchinson, 4 Pa. Co. Court, 18; Higham v. Wright, Mor. Min. Rep., 24.) The general subject of the legislation is the regulation of coal mining operations by a proper ventilation, and the general object sought to be accomplished is the health and safety of employes, and a prevention of accidents, and resulting damage and loss to coal mining property. A control of men employed in the mines is merely incidental to the carrying out of the object of the statute, being subordinate and germane thereto. The objection to the validity of the statute on the ground of duplicity in the title of the act, and the relevancy of the section in question, cannot be maintained, in view of the purpose and scope of the legislation. (*In re* 4th. Jud. Dist., 4 Wyo., 133; *In re* Boulter, 5 Wyo., 339; Inv. Co. v. Carpenter, 9 Wyo., 132; Board v. Stone, 7 Wyo., 280.)

The transcript of the evidence is not a part of the bill, not being included in nor identified by it. (France v. Bank, 3 Wyo., 187; Howard v. Bowman, 3 Wyo., 311; Fishback v. Bramel, 6 Wyo., 297.) The exceptions upon which the errors are grounded were not properly preserved or shown by the bill. (U. S. v. Trabing, 3 Wyo., 144; Johnson v. Irr. Co., 4 Wyo., 164; Freeburgh v. Lamoreux, 12 Wyo., 1.) No exception was taken to the instructions.

Scott, Justice.

The plaintiffs in error, who were defendants below and who will be so designated here, were charged by information, tried, found guilty of a misdemeanor as defined by Section 2572, R. S., and each sentenced to pay a fine of $200, and one-half the costs taxed at $145.85, and to be confined in jail until such fine and costs be paid or until otherwise discharged by due course of law.

1.  It is assigned as error that the court erred in overruling defendant's motion for a new trial.

This assignment brings before this court all of the grounds set up in the motion, and they are entitled to consideration unless from a defective record the jurisdiction to do so has not been conferred.  The grounds of the motion are as follows:

"First, that the verdict of the jury is not sustained by the evidence; second, that the verdict of the jury is contrary to the evidence; third, for errors of law occurring at the trial of the said cause, in this * * *."  The alleged errors are voluminous and relate to the admission of evidence over the objection of the defendants, with the exception of the objection to the giving of the following instruction, viz.:  "The court instructs the jury that under the laws of the State of Wyoming, any miner, workman or other person who shall intentionally enter any place of a mine against caution, or in disobedience to any order given in carrying out the provisions of law relative to coal mining, or who does any other act whereby the lives or the health of persons or security of a coal mine or the machinery employed therein is endangered, is guilty of a misdemeanor; if, therefore, you find from the evidence in this case, beyond a reasonable doubt, that the defendants, Nels Koppala and Isaac Lampe, were miners employed in the Hanna Coal Mine No. 1 at Hanna, Carbon County, State of Wyoming, that the said defendants against caution and in disobedience of orders given in carrying out the provisions of law relating to coal mining, and that the said defendants entered portions of

said Hanna Coal Mine No. 1 and did thereby endanger the lives and health of persons employed in said mine, and the machinery employed therein, you should find the defendants guilty."

"Fourth, that the verdict of the jury is contrary to the law; wherefore the said defendants, Nels Koppala and Isaac Lampe, pray the court that the said verdict heretofore · rendered in the above and foregoing entitled cause be set aside and that the defendants be granted a new trial in said cause."

It is apparent that the consideration of each or either of the first, second and fourth grounds of the motion requires all of the evidence taken upon the trial to be included in the bill of exceptions. This being a criminal case is governed by the rules prescribed by the code of criminal procedure. Section 5377, R. S., provides that "if. exceptions be taken to the decision of the court on overruling a motion for a new trial because the verdict is not sustained by sufficient evidence, or is contrary to law, the bill of exceptions must contain all of the evidence, and the taking of all bills of exceptions shall be governed by the rules established in civil cases." The third ground must be based upon an exception taken at the time the decision or ruling complained of was made. (Sec. 3740, R. S.) And such exception should be preserved and brought into the record by the bill. (Sec. 3743, R. S.) Attached to the bill of exceptions, but not preceding the authentication by the judge and not, therefore, included in the bill, is what purports to be a transcript of the evidence certified to by the stenographer as being "full, true and correct copy of all shorthand notes and testimony taken by me in the case of The State of Wyoming v. Nels Koppala and Isaac Lampe." This transcript is not referred to in the bill, nor is it in any way identified or authenticated so as to make it a part thereof. The case is, therefore, here upon a record which does not include the evidence given upon the trial and this court under the statutes cannot review those ques-

tions, the determination of which would require a consideration of evidence and exceptions which have not been preserved and brought into the record as required by the statute.

The motion for a new trial is based upon exceptions to alleged erroneous rulings of the court, and, although such motion is required to be incorporated in the bill of exceptions, it is not evidence of such rulings. The bill, properly allowed and signed, in so far as the motion is concerned, conveys the motion with the ruling upon it and the exception thereto into the record. The grounds stated therein are not of themselves evidence of error, but the court must look to other parts of the record of what occurred upon the trial, to determine whether a party has just cause for complaint and when the errors complained of should be, but are not, incorporated in the bill, other than by a mere recital in the motion, they cannot be here considered. The motion cannot stand as and for other material parts of the bill which have been omitted, nor can an exception to the ruling thereto be a substitute for an exception to a ruling taken at the time and in the course of the trial and upon which the motion is predicated. It is upon the exception taken at the time of the ruling complained of that the motion is based and upon which the right to a review is given after the same has been brought to the attention of the trial court by such motion and then only when the exception has been properly brought into the record.

The exception to giving the instruction complained of is, however, in the bill. The instruction sets forth all the elements of the offense as defined by the statute. While the word intentionally is used in the statute, such word only imports knowledge of the nature of the act at the time it was done by the accused—that it was done knowingly. While the statute requires that the act be done intentionally, and the word is omitted in the latter part of the instruction, yet words of similar import are used. If the defendants were employed in the mine and committed the act charged

against caution and in disobedience of orders, this court cannot say, in the absence of the evidence as to how given or what the caution was, or as to how the order or rule disobeyed was given, and such being the case, it will be presumed that the evidence given at the trial was sufficient to show that the act was done with knowledge of the danger, and, therefore, intentionally done. In the absence of the evidence we can only determine whether the instruction would be proper under any state of facts that could have been proven under the issue. (Downing v. State, 10 Wyo., 373.) We think there is no doubt that upon the issue there might have been evidence properly before the court which would justify and constitute a sufficient basis for giving this instruction, or if error was committed in giving it, such error may, upon the evidence, have been harmless and, therefore, not prejudicial.

The exception to the instruction brings before this court defendants' contention that the statute under which the prosecution was had is unconstitutional. Section 2572, Revised Statutes, was originally enacted by the first state legislative assembly as Section 7, Chapter 80, Session Laws, 1890-91. The act is entitled, "An act creating the office of State Inspector of Coal Mines, fixing said inspector's salary and prescribing his duties; also providing for the proper ventilation of coal mines and for other purposes; and providing for appropriating moneys for a contingent fund for said office." Section 7 of the act under which the information is filed provides that: "Any miner, workman or other person who shall intentionally injure any shaft, lamp, instrument, air course or brattise, or obstruct or throw open air ways, or carry lighted pipes or matches into places that are worked by safety lamps, or handle or disturb any part of the machinery, or open a door and not close it again, or enter any place of the mine against caution, or disobey any order given in carrying out the provisions of this chapter, or do any other act whereby the lives or health of persons or security of the mines or machinery is endangered, shall be

deemed guilty of a misdemeanor, and may be punished in a manner provided in Section 21 of this act." It is urged that the provisions of this section do not come within the scope of the title; that the title embraces two subjects; and that the act falls within the inhibition of Section 24, Article III, of the constitution, which provides that, "No bill, except general appropriation bills and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

In discussing this question it is unnecessary to decide whether other parts of the act are unconstitutional, for by the constitution parts of an act which do come within the provision and scope of the title will not be disturbed unless the whole act is void as embracing and relating to more than one subject and so expressed in the title. In reading the various sections and provisions of the act it is apparent that the object of the Legislature was to provide for the safety of coal mines and employes therein. That is the main subject of the act, and the details and methods provided are in furtherance of that object. Provisions are made as to how a mine shall be ventilated to avoid danger, and it is made the duty of the owner or agent to maintain ample means for ventilation; as to the amount of pure air necessary to be admitted to the mine for each person actually engaged therein; as to air passages to rid the mine of dangerous and noxious gases; that every place where gas is known to exist shall be examined, and it shall be unlawful for any miner to enter any mine or part of a mine generating fire-damp until it has been examined and reported safe, except when permitted to do so for the purpose of making it safe. In furtherance of this general purpose of keeping the mine in a safe condition, it is also provided that a State Inspector of Coal Mines shall be appointed, whose duty is to examine coal mines, to see that the provisions of this chapter are carried

out and to make record of such examinations showing the condition in which he finds them, especially in reference to ventilation and drainage, the number of mines in the state, the number of persons employed in each mine, the extent to which the laws are obeyed, the progress made in the improvement sought to be secured by the passage of this chapter, the number of accidents and deaths resulting from injuries received in and about the mine, with cause of such accident or death—said report to be made quarterly.

It is unnecessary to enlarge further upon the provisions of the act. Enough has already been said to show its object and purpose. The provision for the appointment of the coal mine inspector and providing his duties were all in aid of and in furtherance of the same general purpose by securing the services of one competent to see that the mines were kept in proper condition, so as to preserve the health and lives of those who are employed therein. The section under which the defendants were prosecuted was in aid of and in furtherance of this general purpose, and to prevent any interference with the performance of the duties exacted of the mine owners or their agents and the State Coal Mine Inspector with reference thereto. In construing an act the constitutionality of which was assailed upon the same ground this court, Groesbeck, C. J., delivering the opinion, said: "The act is not invalidated  *  *  *  so long as the subjects of the Legislature are congruous, cognate or germane and in furtherance of the general subject of the enactment, even though the act may authorize many things of a diverse nature to be done. The constitutional provision must be reasonably construed, for a narrow construction would impede legislation to such a degree that none but a precisian could successfully draft a valid enactment. If the unities of legislation are preserved, and the distinct provisions are but parts of a whole and essential to the whole, the constitutional requirement is met, as the integers of statutory law are not enumerated by the constitution, and, therefore, the Legislature is at liberty to make such divisions of the general subject

of legislation as it thinks proper, if it confines each statute to a single subject, and the subordinate subjects are restricted to the legitimate offspring of the main subject." (*In re* Boulter, 5 Wyo., 329.) The same rule was announced by this court in an earlier case. (*In re* Fourth Judicial District, 4 Wyo., 133.) We are unable to discover under the rules of construction adopted by this court in the foregoing cases any incongruity between the title and the subject covered by Section 7 thereof, but, on the contrary, we are of the opinion that the latter comes within the scope and provision of the title, and further that under the rule of liberal construction the title embraces but one general subject.

It is urged that the act is unconstitutional as being a delegation of power. The act aims to secure the safety and prescribe rules for the guidance and conduct of those engaged in coal mining and which is known to be attended with much danger. While it would be lawful for an employe to enter a part of the mine at one time, it would be unlawful to do so at another. The law cannot nor could the Legislature determine the existence of gas or fire-damp in any room of a mine or its unsafe condition at any particular time. The law is not suspended nor enforced at the whims of the mine superintendent or the mine-boss. It is continually in force and it is a combination of conditions and the intentional acts of one with reference thereto that constitutes the statutory offense. It is in the nature of quarantine or health laws, where the health officer determines certain questions of fact and upon which he is authorized, if necessary for the public safety, to establish a quarantine. So in the case before us the law enjoins those in authority upon the actual or supposed unsafe condition of any part of a mine to stop all mining in and close the mine in part or in whole as may be necessary until it is rendered safe and secure against danger. The law recognizes that to enter it under such circumstances is dangerous to the one so entering, as it is to the security of the mine and machinery and

everyone in it, and when in such condition or supposed condition it should not be entered except for repairs. (Sec. 6 of the original act; Sec. 2570, R. S.) There is nothing in the act but what is analogous to provisions contained in health laws and for the public safety, usually referred to as laws in the nature of police regulations, and in that sense there is no delegation of legislative power. (8 Cyc., 863.)

2. It is urged that the information fails to allege the ownership of the mine or give the names of those employed in the mine whose lives and health were endangered by the acts of the defendants. While the information might have been more specific in some respects, we do not think it insufficient for that reason. The gist of the offense is the intentional entering a coal mine by one under such circumstances as to endanger the health and lives of those employed therein, and the security of the mine and machinery of the same. It is, of course, necessary to designate or state what coal mine, but the ownership thereof is not necessarily the only way of describing it. If it was owned by the defendants, proof thereof would not as in larceny entitle them to acquittal, for the gist of the crime is the violation of a statutory rule which is in the nature of a police regulation. Nor was it necessary to give the names of all of those whose lives and health were endangered. It appears from the information that the defendants themselves were employed in the mine at the time and the names of these two at least of those employed therein are given whose lives were endangered by their own act, and it is also alleged that by such act they endangered the security of said mine and the machinery used therein. It is sufficient in such case to allege such descriptive matter as will inform the accused of the nature of the offense charged and enable him to prepare to meet the same, and this rule is satisfied when upon conviction or acquittal one is able to plead the same in bar of a future prosecution for the same offense. This right is certainly secured to the defendants under this information. The objection goes to the form and manner of charging

the offense and not to the substance, and the defect, if any, is apparent upon the face of the record. Such being the case, it could only be reached by a motion to quash. (Sec. 5322, R. S.; Wilbur v. Ter'y., 3 Wyo., 268.) Having failed to make such motion and having pleaded to the merits they have waived such defect, if any. (Sec. 5326, R. S.)

The other assignments of error as already stated are predicated upon matter which should be, but is not, incorporated in the bill of exceptions, and in the absence of which this court has no jurisdiction to review.

No prejudicial error appearing in the record, the judgment will be affirmed.          .          *Affirmed.*

Potter, C. J., and Beard, J., concur.

### ON PETITION FOR REHEARING.

Beard, Justice.

This case was decided at the April, 1907, term of this court. A petition for a rehearing was filed, and, as the case had been submitted on briefs without oral argument, the court requested oral arguments on the petition for rehearing, and the case has been argued orally and at length.

The petition is based upon two grounds, viz.: that the information is insufficient and charges no offense; and that the statute is unconstitutional. The charge contained in the information is as follows: That the defendants "on the 24th day of July, A. D. 1905, at the County of Carbon and State of Wyoming, did then and there, against the caution and in disobedience of the mining boss of Hanna Coal Mine No. 1, at Hanna, Wyoming, unlawfully, wrongfully and wilfully enter said Hanna Coal Mine No. 1, and did then and there, against the caution and in disobedience of the said mining boss, unlawfully, wrongfully and wilfully enter mine entry No. 28, of said Hanna Coal Mine No. 1, an unsafe portion of said mine, and did thereby endanger the lives and health of persons employed in said mine, and did then and there

and thereby endanger the security of said mine and the machinery employed therein. The said Nels Koppala and the said Isaac Lampe then and there being miners and workmen employed in said mine. The said Hanna Coal Mine No. 1 then and there being the property of the Union Pacific Coal Company, a corporation, which said Union Pacific Coal Company, a corporation, then and there employed an average of more than ten persons in said Hanna Coal Mine No. 1, during every twenty-four hours."

It is contended that the information is not sufficient, because it does not state the names of the persons whose lives were endangered. But, as stated in the opinion, the information also charges that the security of the mine was endangered, which would constitute the offense without the allegation that the life or health of anyone was endangered. The intent to endanger or injure life or property is not an element of the offense; but it consists of the intentional doing of an act with the knowledge that in so doing life or property will be thereby endangered; and the information in this case charges that the defendants, against the caution of the mining boss, entered an unsafe place in the mine and did thereby endanger the life and health of those in the mine and the security of the mine and the machinery therein. To caution means to give notice of danger—to warn against danger—and a fair and reasonable construction of the language of the information is that the defendants did, after being notified and warned of the danger in so doing, intentionally enter an unsafe portion of the mine and did thereby endanger the lives and health of those in the mine and the security of the mine and machinery. Accurate pleading might require a more definite statement in some respects than is contained in the information; but it contains all of the essential elements of the crime, and the charge is substantially in the language of the statute. The offense is purely statutory and the statute fully defines the offense, and in such case it is usually sufficient to charge the offense in the language of the statute. This is especially so

after a verdict. The objections to the sufficiency of the information go to the manner of stating the offense, and not to the substance. It is not in a failure to state some essential element of the offense, but it is in the manner in which it is stated, of which complaint is made. Such objections are waived if not presented by motion to quash before plea. (See former opinion.)

It has been very earnestly urged in argument that the statute is unconstitutional in that it is a delegation of legislative power, and in the language of the brief of counsel for plaintiffs in error, gives "a mining boss or other person the right to make his word equivalent to a law the disobedience of which would make them criminals." We do not so construe the statute. It simply makes it a misdemeanor to enter a mine or some part thereof under certain defined conditions among which is, to intentionally enter any part of the mine against caution whereby life or property is endangered. It is not the entering of some safe place of the mine in disobedience of an arbitratry order of the mining boss when neither life or property would be endangered in so doing; but it is the intentional act of wilfully and knowingly doing that which exposes life or property to danger that the law condemns. The statute makes it the duty of the mining boss to ascertain and know the condition of the mine and it imposes a penalty upon him for permitting anyone to work in an unsafe place except for the purpose of making it safe; and the provisions of the statute we are here considering makes the caution of the mining boss sufficient notice of the danger to render the act of intentionally entering after such caution, and thereby exposing life or property to danger, criminal. The Legislature certainly had the right to say that it should be a misdemeanor for one to intentionally do an act which would endanger life or property after being cautioned by one on whom the law imposed the duty of ascertaining the danger. In other words, the provision is a protection against unreasonable criminal accusations rather than the reverse, since it exposes one to prosecution only

upon the doing of an act after a specified notice of the danger attending it. The situation is the same in effect as to make one guilty of an offense upon knowingly doing the forbidden act. Statutes similar to ours and containing substantially the same provisions have been enacted and have been in force in a number of the states for many years, among which are Illinois, West Virginia, Missouri, Kansas and Iowa; but so far as we are advised their constitutionality has not been questioned upon the ground that they were a delegation of legislative power. Counsel for plaintiffs in error say in their brief, "unquestionably the Legislature under the police powers has a right to say that the omission of certain acts or the commission of certain acts productive of injury to life or property shall·be a crime." That is what we understand the statute to do. .It forbids the commission of certain acts whereby life or property is endangered; and such is the charge contained in the information. The Legislature and not the mining boss has defined what acts should constitute the offense. Upon a re-examination of the case we discover no reason for re-opening the case for further argument. The defendants were tried upon a sufficient information under a valid statute, found guilty by a jury, and the minimum penalty provided by the statute imposed by the court. This in our opinion constituted due process of law, and there is nothing presented by the record in the case showing the defendants to have been deprived of any substantial right, or that they have just cause for complaint. A rehearing is therefore denied.                   *Rehearing denied.*

POTTER, C. J., and SCOTT, J., concur.