## UNITED STATES v. DETTRA FLAG CO., Inc. et al.

### Cr. No. 14707.

United States District Court
E. D. Pennsylvania.

Aug. 22, 1949.

James P. McCormick, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

James E. Gallagher, Jr., and Wilson Stradley, of Stradley, Ronon, Stevens & Young, all of Philadelphia, Pa., for defendants.

Ralph B. Gregg, Indianapolis, Ind., for American Legion, amicus curiæ.

BARD, District Judge.

On June 23, 1948, an information containing eight counts was filed against the defendants for violating Section 76e of Title 18 U.S.C.A. by manufacturing and selling banners and drapes on which were reproduced the insignia and emblem of The American Legion and by circulating and distributing a catalogue bearing a colorable imitation of a reproduction of such insignia and emblem without authorization from the Legion. The case is now before me on the defendants' motion to dismiss the information on the grounds that this statute is an unconstitutional delegation of legislative powers by Congress, and that the information is defective and invalid for indefiniteness.

Section 76e of Title 18 U.S.C.A. (now 18 U.S.C.A. § 705, wherein the wording has been slightly rephrased) provides: "That the manufacture, sale or purchase for resale, either separately or appended to, or to be appended to, or the reproduction of any article of merchandise manufactured or sold, of the badge, medal, emblem, or other insignia or any colorable imitation thereof, or the reproduction thereof for commercial purposes, of any veterans' organization incorporated by Act of Congress, or the printing, lithographing, engraving or other like reproduction on any poster, circular, periodical, magazine, newspaper, or other publication, or the circulation or distribution of any such printed matter bearing a reproduction of such badge, medal, emblem, or other insignia or any colorable imitation thereof, of any such veterans' organization, is prohibited except when authorized under such rules and regulations as may be prescribed by such organization so incorporated. Any person who knowingly offends against any provision of this Act shall on conviction be punished by a fine not exceeding $250 or by imprisonment not exceeding six months, or by both such fine and imprisonment."

■ The retention of legislative power in Congress has been zealously guarded by the courts; delegation of ministerial duties, however, has had long recognition in our democratic form of government. This delegation was first effectuated in The Brig Aurora, 7 Cranch 382, 3 L.Ed. 378, in 1813, and was specifically enunciated by Chief Justice Marshall in Wayman v. Southard, 1825, 10 Wheat. 1, 6 L.Ed. 253, when he acknowledged that Congress may delegate to others the power "to fill up the details". 10 Wheat. page 43. As our nation expanded and our economy became more complex, the problem of legislating for our needs became equally more intricate. Of necessity, more and more ministerial

duties were delegated to others. The expansion of governmental functions during the past two decades by means of administrative agencies has been accomplished to a large extent by utilizing this principle.

■ Beginning with Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294, through to the present, the general legal dogmas which control delegation of ministerial duties have been evolved. Congress must establish definite standards to be followed and policies to be effectuated, and in criminal statutes they must affix the penalty for violation thereof. Within these standards the administrator may exercise his discretion in the application and enforcement of the statute in order to carry out its purpose. Congress may not delegate nor may an administrator usurp the legislative function. Intelligent principles and definite standards must be stated to guide, control, and limit the execution of the statute; they cannot be left to the administrator's discretion.[1]

It is often hard to distinguish the line separating the power to make law from the authority or discretion as to its execution. Mutual Film Corp. v. Industrial Comm. of Ohio, 236 U.S. 230, 245, 35 S.Ct. 387, 59 L.Ed. 552, Ann.Cas.1916C, 296; United States v. Grimaud, supra 220 U.S. at page 517, 31 S.Ct. at page 483. One of the problems here involved requires me to determine, in accordance with the foregoing principles, on which side of the line this statute falls.

The standards imposed by this statute are sufficiently definite and fixed to enable anyone of average intelligence to know what the statute means. We are living in a highly integrated economy based on the production and distribution of goods, so that every one has some knowledge of what is meant by the terms "manufacture", "sale or purchase for resale", "colorable imitation", "printing", and "circulation or distribution of any such printed matter". Certainly, any person engaged in such pursuits would know what these terms meant. If Congress had merely prohibited such action, rather than prohibiting it unless authorized by another, no one would think of asking "What is prohibited?" The standards which the administrator must apply are definite.

The policy or purpose of this statute is likewise clear. Congress is attempting to protect the veterans' organizations and the public. The various veterans' organizations are incorporated by separate federal statutes, see 36 U.S.C.A. Each statute provides that each organization may adopt its own emblems, badges, pins and other insignia. The American Legion, and presumably each organization, has patented or copyrighted its insignia. Thus all rights in this insignia belong initially to the organization concerned. These organizations are national in scope and were formed to commemorate the service and sacrifice of some of our citizenry. As long as the frailties of human nature exist there will always be some outsiders unfortunately who crave and want, but do not deserve, the rights, privileges and honors that go with membership in such organizations. It is proper that Congress should seek to protect the public from frauds perpetrated by impostors, and also to protect the interest of these organizations in self identification. The committee reports in Congress state that the purpose of the Act is to protect these organizations and the public

---

[1] American Power & Light Co. v. Securities & Exchange Comm., 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; United States v. Rock Royal Co-Operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L. Ed. 255; Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624; Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549; Intermountain Rate Cases, U. S. v. Atchison, T. & S. F. R. Co., 234 U.S. 476, 34 S.Ct. 986, 58 L.Ed. 1408; United States v. Grimaud, 220 U.S. 506, 31 S. Ct. 480, 55 L.Ed. 563; Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525; Jaffee, An Essay on Delegation of Legislative Power: II, 47 Columbia Law Review, 561, 566–581.

from the unauthorized use of their insignia, that patent infringement suits have been ineffective, and that the national scope of the organizations and intricacies of interstate commerce require national rather than state legislation. Judiciary Committee Report No. 1147 accompanying H.R. 5982, 76th Cong., 1st Sess. 1; Hearings before Judiciary Sub-Committee on H.R. 5982, 76th Cong., 1st Sess. 2, 4. One of the easiest ways this purpose can be effectuated is by controlling the source. Such a policy or purpose is apparent from the wording of the statute.

■ In controlling the source of this evil Congress cannot be expected to regulate such reproduction in detail. Various concerns or individuals may enter and leave the fields encompassing the different methods of reproducing the insignia; their products may be of good or bad quality, and the quality may vary from time to time; the various organizations may alter or change their insignia, or bring out new insignia. It would be unreasonable to expect Congress to be a continuous fact finding body of such myriad details which might change overnight. Allowing an administrator to regulate these details within established standards is reasonable under the circumstances. Yakus v. United States, supra; United States v. Grimaud, supra; Field v. Clark, supra.

■ Defendants contend that these rules and regulations of The American Legion cannot be arbitrary and unreasonable. I agree. They must conform to the standards and policies established by Congress; they cannot go beyond the scope of the ministerial duties delegated to them. Such would be an attempt to legislate, and would be void. In re Mellea, D.C., 5 F.2d 687. The rules and regulations which are within the scope of the statute must be fair and reasonable. Rules which are arbitrary and unreasonable would violate due process, as would an arbitrary and unreasonable statute. Whaley v. State, 168 Ala. 152, 52 So. 941, 30 L.R.A.,N.S., 499; cf. In re Mellea, supra. No rules or regulations have been called to my attention, and this problem is therefore not before me.

The defendants allege further that the rules and regulations of a private corporation have been invested with the dignity of a penal statute.

■ A penal statute must explicitly establish the elements of the crime which it creates, for a person cannot be left to speculate whether or not his conduct is criminal. Any statute which by its vagueness makes a man of ordinary intelligence guess as to its meaning violates due process of law. Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322. If the statute is sufficiently clear so that the elements of the crime are definite with reasonable certainty, and if the penalty is fixed by the statute, as in the statute before me, then violation of rules and regulations is made a crime not by the administrator but by Congress.

The situation in the Grimaud case, supra, seems very analogous to this phase of this case. The Forest Reserve Act of 1891 and amendments thereto had established definite standards and policies to be effectuated by the Secretary of Agriculture. This official was authorized to "* * * make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forest thereon from destruction; and any violation of the provisions of * * * such rules and regulations shall be punished as is provided for in * * * [Rev.Stat. § 5388, 18 U.S.C.A. § 1853]". 30 Stat. 35.

When a statute has already established definite standards and policies to be effectuated, a statement explaining what the rules shall regulate is surplusage. Thus, the elaborateness of the above section of the Forest Reserve Act should not distinguish it from the statute currently before me.

In upholding the constitutionality of this part of the Forest Reserve Act, Mr. Justice Lamar, speaking for the court, said: "But the authority to make administrative rules is not a delegation of legislative power, nor are such rules raised from an administrative to a legislative character be-

cause the violation thereof is punishable as a public offense." 220 U.S. page 521, 31 S. Ct. page 484, 55 L.Ed. 563. "A violation of reasonable rules regulating the use and occupancy of the property is made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty." 220 U.S. page 522, 31 S.Ct. page 485. "The offense is not against the Secretary, but, as the indictment properly concludes, 'contrary to the laws of the United States and the peace and dignity thereof.'" 220 U.S. page 523, 31 S.Ct. page 485.

Even though the Forest Reserve Act involved a delegation of administrative authority to a public official, and this statute involves a delegation to a private corporation, the foregoing statements by Mr. Justice Lamar appear equally applicable to the instant case. This difference to whom the delegation of authority is made, for reasons indicated later in this opinion, does not change the result in this instance.

The case of Carter v. Carter Coal Co., 298 U.S. 238, 311, 56 S.Ct. 855, 80 L.Ed. 1160, is the only Supreme Court opinion called to my attention which discussed a delegation of federal authority to private individuals. The Labor Relations section of the Bituminous Coal Conservation Act of 1935, 15 U.S.C.A. § 808(g), delegated the power to fix the minimum hours of labor jointly to the producers of more than two-thirds of the annual tonnage of coal in a district and to a majority of the miners in a district. This section was held to be an unconstitutional delegation of power to private individuals. The court reasoned that this was giving the majority the power to regulate the affairs of an unwilling minority whose interests may be, and often are, adverse to those of the majority.

In St. Louis, Iron Mountain & Southern Railway Co. v. Taylor, 210 U.S. 281, 287, 28 S.Ct. 616, 52 L.Ed. 1061, the Supreme Court summarily dismissed the contention that a delegation of authority to the American Railway Association to determine the standard height of draw bars for freight cars was unconstitutional. The question of such a delegation to a private association was not mentioned.

In Southern Pac. Co. v. United States, 171 F. 360, the Ninth Circuit Court of Appeals held constitutional a statute which permitted the owner or custodian of stock shipped or in transit to extend the length of time animals might be confined in cars under his control from 28 to 36 hours. The court said: "* * * the law does not give him authority to make that unlawful which otherwise would be lawful", and then briefly discussed delegation of administrative duties to others. 171 F. page 362.

Although the question immediately before me may not have been presented to the Court in the St. Louis and Southern Pac. cases, these decisions indicate that a delegation of ministerial duties to private individuals, corporations, or associations may be permissible under the federal constitution. See also United States v. Rock Royal Co-Operative, Inc., supra, 307 U.S. at 577, 59 S.Ct. page 1014, 83 L.Ed. 1446. The Carter Coal Co. decision seems to be based on the discriminatory features of that statute rather than prohibiting any delegation of authority to private groups. Most of the cases, however, which have directly decided the constitutionality of such delegations have arisen under state laws.

There is apparent confusion between state courts regarding the extent to which authority may be so delegated. Compare Booth v. State, 179 Ind. 405, 100 N.E. 563, L.R.A.1915B, 420, Ann.Cas.1915D, 987, affirmed 237 U.S. 391, 35 S.Ct. 617, 59 L.Ed. 1011, with Commonwealth v. Beaver Dam Coal Co., 194 Ky. 34, 237 S.W. 1086, 7 A.L.R. 920. Some of this confusion may be caused in part by the different phraseology used or the different interpretation given to the various state constitutions. Hays v. City of Poplar Bluff, 263 Mo. 516, 173 S.W. 676, L.R.A.1915D, 595; see Commonwealth v. Beaver Dam Coal Co., supra, 237 S.W. at page 1089. Some may be caused by the blanket refusal to delegate legislative authority of any kind to private individuals. State v. Crawford, 104 Kan. 141, 177 P. 360, 2 A.L.R. 880; State ex rel. Omaha Gas Co. v. Withnell, 78 Neb. 33, 110 N.W. 680, 8 L.R.A.,N.S., 978, 126 Am.St.Rep. 586; Morton v. Holes, 17 N.D. 154, 115

N.W. 256; cf. Reimer v. Dallas, N.J.Sup., 129 A. 390; see Johnstown Cemetery Association v. Parker, 28 Misc. 280, 59 N.Y.S. 821, 823.

In some instances some courts say that no delegation of legislative power exists but that the statute is complete in itself, merely awaiting a future contingency before it is invoked and that consent of private individuals determines only the existence of this contingency. Particularly is this reasoning prevalent in zoning ordinances where certain uses of realty are dependent upon consent of adjoining land owners[2]. There is no difference, it seems to me, in effect between those statutes which prohibit unless consent is obtained and those which permit if consent is obtained. Both delegate some authority to private individuals.

Administrative duties were first delegated only to government officials or agencies. Any such delegation to private individuals was thought to be unconstitutional because these persons were not charged with the responsibility and duties of public officials.

Careful analysis of the state decisions, however, has led me to conclude that in many jurisdictions administrative duties may be so delegated, but that such delegation will be stringently construed. Many allow delegation of administrative duties to private individuals or corporations when the delegation is under the police power of the state to regulate for the health, safety and welfare of the public[3]. Those statutes which were declared unconstitutional were invalid not necessarily because they involved delegations to private groups, but because they failed to establish definite standards to be followed[4], because the pen-

[2] Myers v. Fortunato, 12 Del.Ch. 374, 110 A. 847; City of Chicago v. Stratton, 162 Ill. 494, 44 N.E. 853, 35 L.R.A. 84, 53 Am.St.Rep. 325; Downey v. City of Sioux City, 208 Iowa 1273, 227 N.W. 125; City of Spokane v. Camp, 50 Wash. 554, 97 P. 770. Contra: State ex rel. Omaha Gas Co. v. Withnell, 78 Neb. 33, 110 N.W. 680, 8 L.R.A.,N.S., 978, 126 Am.St.Rep. 586; City of Glens Falls v. Standard Oil Co. of New York, 127 Misc. 104, 215 N.Y.S. 354, 355.

[3] Regulations by Professional Societies to establish professional standards: Ex parte Gerino, 143 Cal. 412, 77 P. 166, 66 L.R.A. 249 (doctor); Overshiner v. State, 156 Ind. 187, 59 N.E. 468, 51 L.R. A. 748, 83 Am.St.Rep. 187 (dentist); State v. Bonham, 93 Wash. 489, 161 P. 377, L.R.A.1917D, 996 (doctor); cf. Spencer v. Hunt, 109 Fla. 248, 147 So. 282 (dentist). Contra: State v. Crawford, 104 Kan. 141, 177 P. 360, 2 A.L.R. 880 (electrician).

Regulations by carriers regarding sale or use of tickets: Whaley v. State, 168 Ala. 152, 52 So. 941, 30 L.R.A.,N.S., 499; Samuelson v. State, 116 Tenn. 470, 95 S.W. 1012, 115 Am.St.Rep. 805; In re O'Neill, 41 Wash. 174, 83 P. 104, 3 L.R.A.,N.S., 558, 6 Ann.Cas. 869; cf. Commonwealth v. Keary, 198 Pa. 500, 48 A. 472; see Jannin v. State, 42 Tex. Cr.R. 631, 51 S.W. 1126, 1127, 53 L.R.A. 349, 96 Am.St.Rep. 821, rehearing denied 42 Tex.Cr.R. 631, 62 S.W. 419. But cf. People ex rel. Tyroler v. Warden of City Prison, 157 N.Y. 116, 51 N.E. 1006, 43 L.R.A. 264, 68 Am.St.Rep. 763.

Regulations to improve working conditions: Booth v. State, 179 Ind. 405, 100 N.E. 563, L.R.A.1915B, 420, Ann.Cas. 1915D, 987, affirmed 237 U.S. 391, 35 S. Ct. 617, 59 L.Ed. 1011; Koppala v. State, 15 Wyo. 398, 89 P. 576, rehearing denied 15 Wyo. 398, 93 P. 662.

Regulations for storing explosives: Richards v. Fleming Coal Co., 104 Kan. 330, 179 P. 380; Gima v. Hudson Coal Co., 310 Pa. 480, 165 A. 850.

Regulations regarding use of adjoining property: Thomas Cusack Co. v. City of Chicago, (Ill.) 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472; L.R.A.1918A, 136, Ann.Cas.1917C, 594; cf. Myers v. Fortunato, 12 Del.Ch. 374, 110 A. 847; Levy v. Mravlag, 96 N.J.L. 367, 115 A. 350; Commonwealth v. Plymouth Coal Co., 232 Pa. 141, 81 A. 148, affirmed 232 U.S. 531, 34 S.Ct. 359, 58 L.Ed. 713; Eubank v. City of Richmond, (Va.) 226 U.S. 137, 142, 33 S.Ct. 76, 57 L.Ed. 156, 42 L.R.A.,N.S., 1123; State of Washington ex rel. Seattle Title Trust Co., Trustee, v. Roberge, (Wash.) 278 U.S. 116, 121, 49 S.Ct. 50, 73 L.Ed. 210, 86 A.L.R. 654; Mapel v. John, 42 W.Va. 30, 24 S. E. 608, 32 L.R.A. 800, 57 Am.St.Rep. 839.

[4] Nalley v. Home Insurance Co., 250 Mo. 452, 157 S.W. 769, Ann.Cas.1915A, 283; O'Neil v. American Fire Insurance Co., 166 Pa. 72, 30 A. 943, 26 L.R.A. 715, 45 Am.St.Rep. 650; cf. Wasilewski v. Biedrzycki, 180 Wis. 633, 192 N.W. 989.

alty to be imposed was optional upon private determination[5], or because the statute permitted arbitrary discrimination among interested parties[6].

In my opinion this statute prohibiting the reproduction of veterans organizations insignia is constitutional. The delegation of administrative duties is valid in this instance. As I have indicated above, the standards to be followed and the policies to be effectuated are definite and ascertainable. The Penalty for violating any of The American Legion's rules and regulations is fixed by the statute.

In effect, this statute has made infringement of The American Legion's patents a crime. Since their insignia is patented, all rights therein are the property of The American Legion. Unless the defendants get authorization to reproduce this insignia, usually by some form of lease or assignment of the patent, they have no property rights in the insignia.

Since the defendants have no interest in The American Legion's insignia without authorization, I find it hard to see how this statute is unconstitutionally discriminatory. Surely, there is no opportunity in this instance for a majority to force their will upon an unwilling minority, nor can the defendants have interests adverse to those of The American Legion in the subject matter. Carter v. Carter Coal Co., supra.

To a limited degree the statute does allow the American Legion to discriminate between various reproducers, but only to the extent that any owner of a patent can discriminate between different possible assignees. As I indicated above, Congress cannot be expected to keep up to date on the relative abilities of different reproducers. To my mind, this type of discrimination among disinterested parties is not unconstitutional. The patent laws are not unconstitutional because they allow discrimination to this extent, nor should this statute fall for this reason. If The American Legion does not promulgate any rules and regulations, then any reproduction of their insignia violates this law. Such reasonable rules and regulations which are enacted only make lawful that which was previously unlawful.

I realize that private citizens desiring to ascertain if their acts are criminal violations of the laws of the United States, should not be required to look further than the statutes enacted by Congress or, perhaps, in the Federal Register in some cases where there has been a delegation of ministerial duties to governmental agencies. I also realize that The American Legion's rules and regulations probably are not published in any official publication.

In the instant case, nevertheless, the defendants need look only to the statute in question. As far as the record discloses, The American Legion did not promulgate any rules and regulations, and if the defendants were not authorized by The Legion to reproduce their insignia, then, as stated above, any reproduction of the insignia violates this law, and the defendants can be fully apprised of the law from the statute books.

The defendants rely on the case of State v. Holland, 37 Mont. 393, 96 P. 719. Here, a penal statute which prohibited the wilful wearing or use of the insignia of certain named societies unless so entitled under the by-laws to wear that insignia, was declared unconstitutional. While this decision is not controlling, I think the reasoning of that court is sufficient to distinguish that case from this one. Under the Montana statute, the guilt or innocence of an individual was dependent upon the constitution, by-laws, rules and regulations of

[5] Fortune v. Braswell, 139 Ga. 609, 77 S.E. 818; Johnstown Cemetery Ass'n v. Parker, 28 Misc. 280, 59 N.Y.S. 821, affirmed 45 App.Div. 55, 60 N.Y.S. 1015; Jannin v. State, 42 Tex.Cr.R. 631, 51 S. W. 1126, 53 L.R.A. 349, 96 Am.St.Rep. 821, rehearing denied 42 Tex.Cr.R. 631, 62 S.W. 419.

[6] McCown v. Gose, 244 Ky. 402, 51 S.W.2d 251; Commonwealth v. Beaver Dam Coal Co., 194 Ky. 34, 237 S.W. 1086, 7 A.L.R. 920; Morton v. Holes, 17 N.D. 154, 115 N.W. 256; Eubank v. City of Richmond, (Va.) 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156, 42 L.R.A.,N.S., 1123; State of Washington ex rel. Seattle Title Trust Co., Trustee, v. Roberge, (Wash.) 278 U.S. 116, 49 S.Ct. 50, 73 L. Ed. 210, 86 A.L.R. 654.

societies, some of which were secret. Thus, a conviction might result from rules of which the individual could obtain no knowledge.

The court in the Holland case also felt that the standards to be applied were not sufficiently established because the insignia might be changed in secret meeting of the society. To my mind, the standard is not what the insignia is, but what is to be done with the insignia. But accepting that rationale as correct, the result in this case is not thereby changed. The American Legion's insignia is so established and well known that the standard can be considered to be fixed and definite. Even if The American Legion should change their insignia, the secret factor is not present in this instance.

The defendants also urge that the information is defective in that it does not show what regulations of the American Legion were violated by the defendants.

■ Each one of the eight counts in the information ends with some form of the phrase "which reproduction was not authorized by the rules and regulations as were prescribed by the aforesaid The American Legion." These words do not mean that the defendants violated some regulation which otherwise authorized them to reproduce the insignia. If the crime as charged in this indictment merely pertained to the manner of reproduction, I might be inclined to agree with the defendants' argument. But this is a situation where the statute is complete in itself. These words mean to me that no regulation was passed by The American Legion which authorized the defendants in any way to reproduce the insignia which they are charged with reproducing. To accept the defendants' argument would prevent them from ever being prosecuted, for it is impossible to cite a non-existent rule or regulation. Of course, if the defendants were authorized to reproduce The American Legion insignia, that can be raised as a matter of defense in the trial of this case.

The defendants' motion to dismiss the information is denied.