**Ricky Don CUTBIRTH, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

No. 5838.

Supreme Court of Wyoming.

May 31, 1983.

Sylvia Lee Hackl, Wyoming Public Defender Program, Gerald M. Gallivan, Wyoming Defender Aid Program, and Michael A. Blonigen, Student Intern, Wyoming Defender Aid Program, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Cr. Div., John W. Renneisen, Sr. Asst. Atty. Gen., Margaret M. White, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE, and BROWN, JJ.

BROWN, Justice.

Appellant was convicted by a Lincoln County jury of second degree murder in violation of § 6–4–104, W.S.1977.[1] He raises three issues:

"1. Whether the evidence is sufficient to prove, beyond a reasonable doubt, that appellant killed his wife 'maliciously and purposely.'

"2. Whether the evidence indicates the appellant's conduct was, at most, negligent.

"3. Whether the jury instructions on involuntary manslaughter misdefined the elements of offense and were so confusing and misleading that they deprived the appellant of a lesser included offense instruction and constitute plain error."

We affirm.

Appellant did not testify at trial; however, police officers related statements he made to them shortly after the shooting.

There is no issue raised regarding the voluntariness of such statements. Appellant maintained while being questioned by police officers that the shooting was accidental.

I

We will discuss the first and second issues together because they both address the question of sufficiency of the evidence. We have stated the basic appellate rule innumerable times:

" 'The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. * * *' " *Harries v. State,* Wyo., 650 P.2d 273, 274 (1982).

On the evening of April 4, 1982, appellant and his wife had a few drinks in their home. They argued. Appellant's wife tore from his neck a religious medal which had some sentimental value to him. Appellant got his gun from a cabinet and removed it from its holster. The gun discharged; the bullet struck his wife in the head and killed her.

There were significant facts from which the jury could find that appellant maliciously intended to use the revolver against his wife. Appellant pointed the gun toward his wife before its discharge. The gun was discharged within two feet of the victim's forehead, and the bullet entered the victim's skull almost between the eyes. The death weapon was a .357 magnum revolver,

---

1. Murder in the second degree.

"Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree * * *."

with normal trigger pull and no malfunction. After the shooting appellant threw the gun outside.

Appellant's landlady testified that in 1981 she saw him hit the victim three times in the face after a heated discussion and that he continued toward her with clinched fists while the victim backed away. On other occasions the landlady saw appellant run after the victim who was trying to escape. Another witness testified that appellant told him that he had given the victim a black eye because she was "acting like a bitch." The mother of the victim testified that she took her daughter to a medical clinic twice for black eyes, broken lip and bites on her arm and breast caused by appellant. The mother of the victim talked to appellant about the injuries; appellant told his mother-in-law that he was sorry and would never do it again.

With respect to some of the circumstances surrounding the shooting, appellant told conflicting stories. Appellant stated that he could have shot his wife without realizing it, but that he didn't remember doing so. He also stated the opposite: "Yes, I was the one that shot my wife." He stated further that he had never been that mad and in that type of condition before. He also said that he had a bad temper.

Appellant maintained that the State failed to prove beyond a reasonable doubt that the killing was done purposely and maliciously. Appellant relies almost entirely on *Eagan v. State*, 58 Wyo. 167, 128 P.2d 215 (1942), to persuade us that second degree murder was not proved beyond a reasonable doubt, or that if anything, he is guilty only of involuntary manslaughter. It is from that case the so-called *Eagan* rule was announced:

> " * * * Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accept-

ed. * * * " *Eagan v. State*, supra, 128 P.2d at 226.

The *Eagan* rule was invoked in *Doe v. State*, Wyo., 569 P.2d 1276, 1277 (1977):

> " * * * In these cases, our duty is neither to substitute our opinion for that of the jury, nor to blindly accept the jury's determination as correct. We are required, in order to sustain the conviction, to find that there is sufficient probative evidence, direct or circumstantial, to prove intent and malice beyond a reasonable doubt. In doing so, we cannot—and will not—retry the facts of a case, but will only apply the rules set forth herein to the particular facts and circumstances which are presented."

The *Eagan* rule has limitations; it does not help appellant under the facts of this case. The rule applies to testimony by an accused; here, appellant did not testify. Even if we look upon the testimony as his because the police were relating his statements, its application is doubtful if the witness' credibility is questionable, his testimony inconsistent, or his account of the incident improbable.

The *Eagan* rule is helpful to a defendant only in those circumstances where his explanation remains uncontradicted, either directly or by fair inference from testimony and evidence. *Doe v. State*, supra. The jury is at liberty to accept portions of appellant's testimony that it deems to be reasonable, and reject the other portions. Considering appellant's various and conflicting accounts of the circumstances surrounding the shooting, the jury could reasonably conclude that appellant's credibility had been impeached, that his stories were inconsistent and that the exculpatory portions were improbable.

We therefore cannot say as a matter of law that appellant's assertion that the shooting was accidental was unimpeached, nor can we say that his various accounts were consistent or probable. These determinations are conditions precedent to a reversal under *Eagan*. *Leitel v. State*, Wyo., 579 P.2d 421 (1978).

In *State v. Bruner,* 78 Wyo. 111, 319 P.2d 863 (1958), it was pointed out that the defendant was quiet and peaceable, always treated the deceased courteously, and was always good to her. The court referred to these character traits and history of conduct as being inconsistent with malice. Here, the facts are opposite. The appellant had a bad temper, and a history of violence. There was evidence that he had mistreated his wife. It was not unreasonable for the jury to consider these character traits and history as some evidence of malice.

" * * * [T]he malice of which the crime speaks may be inferred from the use of a deadly weapon in a deadly manner, if the facts and circumstances will permit. * * * Malice may be inferred from all of the other facts and circumstances. * * * " *Leitel v. State,* supra, at 424.

In *Smith v. State,* Wyo., 564 P.2d 1194 (1977), we said:

"Purposely denotes intent. Use of a deadly weapon gives rise to a presumption of intent to kill. * * * The design to kill is inferred from the act of killing. * * * Malice may be inferred from the use of a deadly weapon in a dangerous and deadly manner if the facts and circumstances so allow. * * * "

There is sufficient evidence from which the jury could find beyond a reasonable doubt that appellant killed his wife purposely and with malice. The evidence favorable to the State as it pertains to second degree murder, together with favorable inferences which may be reasonably and fairly drawn, is inconsistent with involuntary manslaughter.

## II

Appellant alleges error in instructing the jury on the lesser included offense of involuntary manslaughter. He asserts that one of the instructions "implies that involuntary manslaughter requires an intent." Further, he complains that another instruction told the jury that involuntary manslaughter required general intent. Appellant says, "The concepts of intent and involuntary manslaughter are mutually exclusive."

The two instructions may not be models that prosecutors should propose in the future. However, if anything, they tend to make it more difficult to obtain a conviction by the hint that intent is an element of the crime of involuntary manslaughter. In the two instructions alluding to intent, reference is made in the context of conduct that is equivalent to criminal intent. This part of the instructions is in the nature of "gilding the lily," but really did not add to or diminish from the court's instructions. It should be noted that in the instruction given by the trial court which delineated elements of involuntary manslaughter, intent is not indicated as an element of the crime.

Appellant did not object to the court's instructions. Rule 31, Wyoming Rules of Criminal Procedure, provides that giving of instructions and making of objections thereto is to be done pursuant to Wyoming Rules of Civil Procedure. Rule 51, W.R.C.P., provides:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

Not having objected to the court's instructions, appellant must show plain error under Rule 49(b), W.R.Cr.P., which provides that plain error or defects affecting substantial rights may be noted although they were not brought to the attention of the court.

"The requirements for plain error are that the record must be clear as to what happened at the trial level, the error must involve a clear rule of law, and the facts of the case must clearly violate the rule. Once these requirements are met, the appellant still bears the burden of showing that a substantial right was adversely affected. [Citations.] The plain error rule, as this court has stated many times, is to be applied sparingly and only in exceptional circumstances. [citations.]

* * * " *Britton v. State,* Wyo., 643 P.2d 935, 937 (1982).

Appellant has not demonstrated a clear violation of a clear rule of law. He appears to be saying that if the instructions regarding involuntary manslaughter had been correct, the jury may have found appellant not guilty of second degree murder and guilty of involuntary manslaughter. No authority for this novel theory is cited, nor are we persuaded by appellant's circuitous reasoning. It is difficult to see how a deficient instruction on a lesser offense upon which there was no conviction could be plain error. Under the facts of this case we hold that it was not.

The court instructed the jury on the statute and elements of second degree murder, and defined purposely, maliciously and premeditation, words which appear in the second degree murder statute. The court also instructed the jury that if it did not find appellant guilty of second degree murder, it must proceed to determine guilt or innocence of any lesser included offense, one of which is involuntary manslaughter. In this case, then, the jury did not consider involuntary manslaughter, nor did it need to read the instructions pertaining to that lesser included offense, unless they enjoyed the literary quality of the jury instructions, or were waiting for dinner.

Appellant has alleged instructional error on something that the jury did not consider or need to consider. There is no merit in this assignment of error.

Affirmed.