Lentz I. CHEATHAM,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 85–29.

Supreme Court of Wyoming.

May 15, 1986.

Rehearing Denied July 18, 1986.

Leonard D. Munker and Martin J. McClain, Wyoming Public Defender Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Sylvia Lee Hackl, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J.,* and ROSE,** ROONEY,*** BROWN and CARDINE, JJ.

THOMAS, Chief Justice.

The novel question which must be resolved in this case is whether a charging document in the county court in a felony prosecution which is titled an information and which then is filed in the district court only as a part of the record transmitted to the district court by the county court fails to invoke the jurisdiction of either the county court or the district court. Other issues are presented by Lentz Cheatham relating to the admission of a statement which he asserts was obtained in violation of his constitutional right to counsel; impermissible comment on his exercise of his constitutional right of silence; and insufficiency of the evidence to sustain the jury's verdict of guilty of involuntary manslaughter. Only the claim relating to the improper admission of his statement was presented to the district court by Cheatham. The other claims of error are raised for the first time

---

* Case reassigned to Thomas, C.J., December 23, 1985.

** Retired November 1, 1985.

*** Retired November 30, 1985.

in this appeal. The district court did not err in admitting Cheatham's statement into evidence, and we find no error with respect to the other issues presented by Cheatham. We affirm the judgment and sentence.

Lentz Cheatham's wife died as a result of a subdural hematoma of the right side of her brain according to a pathologist who testified at trial. The hematoma caused expulsion of vomit and also depression of the gag reflex. This combination of physiological problems resulted in her death by aspiration. Cheatham then was charged with and convicted of involuntary manslaughter for causing his wife's death in violation of § 6–2–105(a)(ii)(B), W.S. 1977 (June 1983 Rev.).[1] The district court sentenced Cheatham to a term of 10 to 15 years in the Wyoming State Penitentiary. Cheatham appeals from that judgment and sentence.

In his brief Cheatham sets forth the following issues to be resolved:

"1. Whether the District Court proceedings were a nullity because of the prosecution's failure to comply with § 7–6–102, W.S.1977, Cum Supp and § 7–6–107, W.S.1977, which set forth the procedure necessary to provide the District Court jurisdiction over a criminal matter.

"2. Whether the State introduced evidence obtained in violation of Appellant's right to counsel.

"3. Whether there was impermissible comment upon the Appellant's decision to invoke his constitutional right of silence and not testify at trial.

"4. Whether there exists insufficient evidence in the record to sustain Appellant's conviction on appeal."

In its brief the State of Wyoming articulates the issues in this way:

"I. Whether error occurred in the filing and amending of the Information, thereby depriving the district court of jurisdiction.

"II. Whether the trial court erred in admitting into evidence statements made by Appellant while in custody.

"III. Whether the prosecutor's remarks during his closing argument were comments on Appellant's right to remain silent.

"IV. Whether the evidence was sufficient to sustain the conviction."

Cheatham in a reply brief supplements the first issue in his initial brief by stating the following questions:

"1. Whether the plain error standard of review is applicable to jurisdictional defects.

"2. Whether the statutes governing the procedure for filing of informations are a nullity."

On the morning of April 14, 1984, the deceased wife's young son had occasion to see her when she was nude. He observed that she only had one bruise below her right knee. Beginning around noon on April 14, 1984 and continuing throughout the afternoon and evening of that day, Cheatham and his wife were seen drinking in several bars in Evanston, Wyoming. They also attended a banquet of a fraternal organization and returned to a local club to dance at approximately 9:00 P.M. The testimony of witnesses at the trial indicates that the wife became intoxicated. The witnesses described her arguments with Cheatham and also her falls while on the dance floor. There was testimony that she had struck her head, once on the table and another time on the dance floor. In addition to testimony about the arguments, witnesses testified to altercations, with some describing Cheatham slapping his wife and others describing her striking him. At approximately midnight of April 14, 1984, Cheatham took his wife home.

What occurred after their arrival home primarily is depicted by Cheatham's statements to investigating officers and by the

---

**1.** § 6–2–105(a)(ii)(B), W.S.1977 (June 1983 Rev.) provides:

"(a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied, * * *.

\* \* \* \* \* \*

"(ii) Involuntarily, but:

\* \* \* \* \* \*

"(B) Recklessly."

testimony of the pathologist. Cheatham stated that his wife fell down some stairs at the house, and that later she became belligerent, screaming at Cheatham and they then engaged in a struggle. He said that at one point he pushed his wife causing her to fall against a door and then to the floor. He left her lying there and went to fill his truck with gas. When he returned she was still on the floor, and he went to bed without disturbing her. During the night he awoke and carried his wife to bed because she still was lying on the floor. When he awoke on the morning of April 15, 1984, she was dead.

Cheatham's first reaction was to inform his wife's mother of her death, and the mother suggested an autopsy. Cheatham did not feel that one was necessary. After the embalming process had been commenced, a deputy county coroner noticed a large number of bruises on the wife's body. One count was approximately 118. The pathologist then was requested to perform an autopsy. The autopsy disclosed a subdural hematoma on the right side of the wife's brain. In the opinion of the pathologist this hematoma was caused by a blow to the head by an irregular object. The hematoma caused expulsion of vomit which was accompanied by a depression of the gag reflex, and this combination of effects resulted in the wife's death by aspiration.

On April 15 the police first questioned Cheatham about his wife's death. Later that day Cheatham was arrested, and after he had been taken into custody and advised of his constitutional rights in accordance with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the police again questioned him. A further interview was conducted the following morning. Each interview was electronically recorded. At the beginning of the last interview Cheatham said that he would like to have a lawyer but that his friend had been unable to contact one for him at that time. After some dialogue about his desire to see a lawyer, Cheatham continued to answer questions propounded by the officers, and he made both inculpatory and exculpatory statements concerning the circumstances surrounding his wife's death.

At his trial Cheatham presented testimony by another pathologist who discounted the opinion of the examining pathologist. Through this witness Cheatham presented a theory that a combination of valium, which was found to be present in his wife's body, and the intoxicating liquor which she had consumed could cause the suppression of the gag reflex resulting in aspiration of vomit. The pathologist called by Cheatham also testified that it would be impossible to conclude which blow to the head may have caused the subdural hematoma.

An account of the evidence would not be complete without noting certain statements attributed to Cheatham. Unfortunately they can only be appropriately reflected in the language which he used. One witness testified at trial that Cheatham told him, "I killed the bitch." Another witness stated that Cheatham claimed that he "kicked the piss out of her."

With this general background we shall proceed to treat with the issues presented by Cheatham in his appeal. Additional facts relating to the specific issues will be set forth to the extent necessary in resolving the questions posed. We will deal first with the question of the sufficiency of the charging document to invoke the jurisdiction of both the county court and the district court.

On April 16, 1984 an information was filed in county court which alleged that Cheatham had committed second degree murder in violation of § 6–2–104, W.S.1977 (June 1983 Rev.). That information was amended twice. The first amendment adjusted the date of the crime from April 14, 1984 to April 15, 1984. The second amendment reduced the charge to involuntary manslaughter as proscribed by § 6–2–105(a)(ii)(B), W.S.1977 (June 1983 Rev.). A preliminary hearing was conducted in the county court, and after the county court judge found sufficient probable cause Cheatham was bound over for trial in the district court. The record which was trans-

mitted from the county court to the district court included the information and the two amendments to it, and these documents were filed in the district court. No new information was filed in the district court.

In presenting his first issue Cheatham argues that in order to charge a felony in the county court a complaint, not an information, should be filed. This is the reason for his contention that the county court did not acquire jurisdiction. Cheatham then argues that, when an accused has been bound over to the district court, an information must be filed in the district court, and that since no information was filed other than the one incorporated in the documents transmitted from the county court the district court had no jurisdiction over this case. Cheatham does not cite any authorities other than the statutes and the Wyoming Rules of Criminal Procedure.

In his argument he points to § 7–6–102, W.S.1977, Cum.Supp.1985, which provides in pertinent part:

"Information may be filed during term time or in vacation in any court having jurisdiction of the offense, crime or misdemeanor specified therein, by the district attorney of the proper county, as informant. * * * "

§ 7–6–107, W.S.1977, provides in pertinent part:

"No information shall be filed against any person, for any felony until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace or other examining magistrate or officer, and shall have been held for trial by such court or officer, unless such person shall have waived his right to such examination; * * *."

Rule 4(a) W.R.Cr.P. provides in pertinent part:

"If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it."

Cheatham contends that the jurisdiction of the county court can be invoked only by the issuance of a warrant followed by its execution based upon a complaint. He argues that nothing justifies the filing of an information in the county court. We also understand that he asserts a defect arising under § 7–6–107, W.S.1977, because in light of the improper pleading and process the preliminary examination was not conducted as provided by law. With respect to the jurisdiction of the district court he then argues that the failure to comply with § 7–6–102, W.S.1977 (Cum.Supp.1985), requires a conclusion that the district court had no jurisdiction over the offense even if the proceedings in the county court were lawful.

When he was arraigned in the district court Cheatham entered a plea of not guilty, and did not attack the information. At that time Cheatham made no motion to dismiss because of the defects asserted in this appeal. Rule 16(b)(2), W.R.Cr.P., provides in applicable language:

"* * * Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. * * * Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

In *Fuller v. State*, Wyo., 568 P.2d 900 (1977), we noted that Rule 16(b)(2), W.R. Cr.P., is identical in its broad scope and application to Rule 12(b)(2), F.R.Cr.P. One commentator has said:

"Among the matters now falling within Rule 12(b)(1) or 12(b)(2), and thus waived if not promptly raised, are * * * failure of the magistrate to follow the Criminal

Rules * * * and defects in the indictment or information that go to matters of form rather than substance." 1 Wright, Federal Practice and Procedure, Criminal § 193, p. 699–702 (2d Edition 1982). This approach is substantially identical to that taken by this court prior to the adoption of the Wyoming Rules of Criminal Procedure. In *Koppala v. State,* 15 Wyo. 398, 89 P. 576, 579 (1907), this court said, referring to a similar provision that an objection which went "to the form and manner of charging the offense and not to the substance * * * could only be reached by a motion to quash. Having failed to make such motion and having pleaded to the merits, [defendants] have waived such defect, if any."

This court also has held that the filing of an amended information is a procedural matter, not one of jurisdiction. *McGinnis v. State,* 17 Wyo. 106, 96 P. 525 (1908); *State v. Kusel,* 29 Wyo. 287, 213 P. 367 (1923). In the McGinnis case, a jurisdictional defect was asserted because the defendant claimed that the court lacked jurisdiction when the information was amended and the amended information was filed without leave of the court. In *State v. Kusel,* supra, a county attorney from a different county filed the amended information, and the defendant asserted that this deprived the court of jurisdiction. Both challenges to the jurisdiction of the court failed. After the adoption of Rule 16(b)(2), W.R.Cr.P., this court has continued the rule that defects in the institution of criminal proceedings and in the indictment or information which go to form only and not to substance are waived if they are not challenged by a proper motion or pleading prior to the entry of a plea. See *Fuller v. State,* supra; *Schuler v. State,* Wyo., 668 P.2d 1333 (1983).

■ The asserted defects in this case do not concern matters of substance but only matters of form. The pleading which was used as a complaint to initiate this case in the county court was titled an information. Although it was captioned for the district court the county court permitted it to be filed. It was, however, "made upon oath before a commissioner," and was accompanied by an affidavit setting forth the facts underlying the allegations. It was executed by the county attorney. This document, without question, justified the issuance of an arrest warrant. In substance it met the requirements of Rule 3, W.R. Cr.P., which provides:

"The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a commissioner."

The information did provide a foundation for the neutral judgment of a judicial officer that resort to further criminal process would be justified. *State v. Faltynowicz,* Wyo., 660 P.2d 368 (1983). In accordance with this latter case, the pleading did set forth the essential facts establishing probable cause using a common sense approach. Even though it was titled an information, this mistake in the caption did not deprive the county court of jurisdiction because it was clear that the pleading was utilized as a complaint for purposes of the rules.

■ The information accomplished the same function in the district court even though it was filed as a part of the transcript of the proceedings in the county court rather than directly by the county attorney. In *Gonzales v. State,* Wyo., 551 P.2d 929, 933 (1976), this court outlined the requirements for legal sufficiency of a charging document in the district court in this way:

"[A]n indictment to be legally sufficient must fairly indicate the crime charged, must state the essential elements of the alleged crime and be sufficiently definite so that the defendant can prepare his defense and grant protection from further prosecution for the same offense (double jeopardy)."

Cheatham does not claim that the information which was filed in the district court as part of the county court proceedings failed to meet this standard. He contends that it was necessary to file a new document which had to be accomplished by the county attorney. That is a defect which does

not reach the substance of the document. Such a defect has not been held to be jurisdictional in the past, *State v. Kusel,* supra, and this omission does not reach the level of a jurisdictional defect pursuant to the Wyoming Rules of Criminal Procedure. See Rule 9(a), W.R.Cr.P. In accordance with the provisions of Rule 16(b)(2), W.R. Cr.P., the defect was waived in this instance.

We turn then to Cheatham's claim that his statements which were admitted into evidence were obtained in violation of this right to counsel and were therefore involuntary under the Fifth and Sixth Amendments of the Constitution of the United States and Article 1, § 10 and § 11 of the Constitution of the State of Wyoming.[2] Specifically Cheatham asserts that statements he made to the police officers were obtained pursuant to an interview which was initiated by the police officers after he had requested an attorney, and that these statements were not admissible pursuant to the rule promulgated in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

There were three interviews. One occurred prior to Cheatham's arrest; one occurred after his arrest when he was informed of his constitutional rights in accordance with the requirements of *Miranda v. Arizona,* supra; and the third occurred the following morning, April 16, 1984, at approximately 11:00 A.M. The record discloses the following dialogue at this latter interview:

> "OFFICER: Lentz, before I ask you any questions let me read you your rights under Miranda, you have the right to remain silent do you understand that? You do?
>
> "APPELLANT: I didn't know.

"OFFICER: Okay, you don't understand that particular right?

"APPELLANT: I do now.

"OFFICER: You do.

"APPELLANT: I didn't you know.

"OFFICER: Okay, anything you say can and will be used against you in a court of law, do you understand that?

"APPELLANT: Uh-huh.

"OFFICER: You have the right to talk to a lawyer and have him present with you while you are being questioned, do you understand that?

"APPELLANT: I haven't gotten ahold of one, I called last night to a friend, have him get ahold of him but he wasn't home and I didn't figure they'd let me this morning.

"OFFICER: Oh they'll let you.

"APPELLANT: Will they?

"OFFICER: Uh-huh. You bet they will. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish.

"APPELLANT: Uh-huh.

"OFFICER: Okay, you can decide at any time to exercise these rights and not answer any questions or make any statements, do you understand that?

"APPELLANT: Uh-huh.

"OFFICER: Okay, do you understand each of the rights that I've just explained to you?

"APPELLANT: I think so.

"OFFICER: And having those rights in mind you want to talk to me now Lentz?

"APPELLANT: Well I don't care, I'd like to see a lawyer, too you know.

"OFFICER: Oh yeah I understand, it's up to you, I've got some questions that you know I really feel that I need to talk

---

**2.** The Fifth Amendment of the Constitution of the United States provides in pertinent part:
"No person shall be * * * compelled in any criminal case to be a witness against himself, * * *."
The Sixth Amendment of the Constitution of the United States provides in pertinent part:
"In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence."

Article 1, § 10 of the Constitution of the State of Wyoming provides in pertinent part:
"In all criminal prosecutions the accused shall have the right to defend in person and by counsel, * * *."
Article 1, § 11 of the Constitution of the State of Wyoming provides in pertinent part:
"No person shall be compelled to testify against himself in any criminal case, * * *."

to you about, I can't force you to talk to me I'm not going to do that.

"APPELLANT: Well ask me and we'll see."

Before the trial commenced Cheatham moved to suppress the statement which was obtained on this occasion as well as his previous statements. The trial court denied the motion to suppress, and the basis for this issue on appeal is the admission of the statement which followed the dialogue quoted above.

In *Edwards v. Arizona*, supra, upon which Cheatham relies, the Supreme Court of the United States was confronted with an instance in which an accused person invoked his right to have counsel present during his custodial interrogation. The court there held that in order to establish a waiver of right to counsel subsequent to that right being invoked by the accused the state needed to demonstrate that the accused had initiated further communication, exchanges or conversations with the police, and that a waiver could not be demonstrated by a mere showing that the accused responded to further interrogation. The court did recognize that a valid waiver could occur but held that additional safeguards must be imposed once the accused has requested counsel.

The holding in *Edwards v. Arizona*, supra, was not a novel issue in Wyoming. This court anticipated that requirement six years previously in *Dryden v. State*, Wyo. 535 P.2d 483 (1975). *Daniel v. State*, Wyo., 644 P.2d 172, 178 n. 2 (1982). Although the issues were perhaps novel in some jurisdictions this court previously had dealt with a number of the questions presented in Edwards. Cheatham presents a question which this court resolved in *Daniel v. State*, supra. We held in that case that the facts distinguished it from *Edwards v. Arizona*, supra. The suspect in the Edwards case had stated: "I want an attorney before making a deal." That statement was held to be an unequivocal request for counsel which invoked the additional safeguards. In Cheatham's instance, as in *Daniel v. State*, supra, there did not

occur any unequivocal request for counsel. Cheatham indicated that he did not mind talking and that he would also like to see a lawyer. "If it is difficult for the police officer to determine whether a suspect indeed intends to invoke his right to have an attorney present, the officer may seek clarification of the suspect's desires * * *." *Daniel v. State*, supra, 644 P.2d at 177. The circumstances may justify a finding of waiver even though there has been an equivocal request for counsel. *Nash v. Estelle*, 597 F.2d 513 (5th Cir.1979) (en banc), cert. denied, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979).

■ After Cheatham articulated what we perceive to be an equivocal request, he said in response to the officer's statement that there were some questions that the officer felt he needed to talk to Cheatham about, "Well ask me and we'll see." The officer acted properly in attempting to clarify what was an equivocal request for counsel. Cheatham then did not express an unequivocal request for counsel. Instead he invited the officer to ask his questions and responded to the questions which were asked. He did not request a lawyer or a termination of the interview. Under these circumstances the rule in *Edwards v. Arizona*, supra, does not pertain, but the usual test for waiver is applied. See, *Daniel v. State*, supra.

■ The usual test is expressed in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 146 A.L.R. 357, 82 L.Ed. 1461 (1938), in which the court said:

"* * * A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver or right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

Under this test the burden, when the question is raised, is upon the state to demonstrate a knowing and voluntary waiver of that right. *Mayer v. State*, Wyo., 618 P.2d

127 (1980). The Supreme Court of the United States also has held that although mere silence is not enough to establish a valid waiver:

"That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights.

\* \* \* \* \* \*

"[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

Applying these tests to this case, we uphold the decision of the district court which admitted the statements into evidence. There was a valid waiver. Cheatham was 53 years old, a graduate of junior high school and an experienced businessman. He had been advised of his constitutional rights on the night he was arrested, and he was advised of them again the next morning prior to the furnishing of the statement which is questioned here. His responses demonstrate that he understood each of his constitutional rights. He did not specifically say that he waived his right to have an attorney present during questioning, but he invited the officers to go ahead with their questions. It was obvious that there was no attorney present. We conclude that Cheatham's background and responses demonstrate his understanding of his constitutional rights. His request that the officer go ahead with the questions and his responses under the circumstances manifest a voluntary waiver of his right to the presence of counsel. There was no error in admitting the statement into evidence.

As to Cheatham's third claim of error relating to impermissible comment upon the exercise of his right of silence, our examination of the record satisfies us that there was no comment made by the prosecutor upon Cheatham's exercise of his right of silence. It follows that there is no error

in this regard, and it is unnecessary for the court to further consider the relative merits of the court's position with respect to prejudice per se as articulated in *Westmark v. State,* Wyo., 693 P.2d 220 (1984).

This is not a new issue for this court, and the parameters of our position with respect to the issue are becoming established. In *Oldham v. State,* Wyo., 534 P.2d 107 (1975), we adopted the test which the Tenth Circuit Court of Appeals articulated in *Knowles v. United States,* 224 F.2d 168, 169 (10th Cir.1955) for making the determination as to whether a prosecutor's statement constitutes an improper comment:

"[T]he test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. [Citation omitted.] It is not improper for the government to draw attention to the failure or lack of evidence on a point, if it is not intended to call attention to the failure of the defendant to testify."

The statement by the prosecutor in closing argument that "the sheer weight of the evidence is just too much for [the defendant] to explain," was not found to be improper in Oldham v. State, supra. We there concluded that the statement was not one which "the jury would naturally and necessarily take it to be, comment on defendant's failure to take the stand." *Oldham v. State,* supra at 112–113. A similar argument was made by the prosecution in *Deeter v. State,* Wyo., 500 P.2d 68, 71 (1972):

"There is not one single thing \* \* \* that you have to weigh in your mind as to 'is he telling the truth,' \* \* \* or 'which one is right,' \* \* \*. There's none of that in this case because there are only two witnesses. The state of Wyoming called those two witnesses \* \* \*."

Those statements were held to not constitute a comment upon the failure of the defendant to testify. More recently in *Stanton v. State,* Wyo., 692 P.2d 947 (1984) we ruled that a statement by the prosecutor to the effect that the defendant's only

witness was not even there when these things occurred did not constitute an improper comment by the prosecutor upon the defendant's exercise of his right of silence.

In this instance Cheatham contends that the following statements did violate the rule forbidding comment upon the exercise by a defendant of his right of silence:

" * * * We don't know exactly what happened in the Cheatham house on April 15, 1984. There are only two people that knew what happened during those early morning hours: Linnea Cheatham, who, obviously, couldn't testify here; and the Defendant.

"We don't know what Linnea Cheatham would have testified to here in Court. We do have, however, the Defendant's version through his discussion with the police; his actions on April 15, 1984; and his statement to the officers that he made on April 15, 1984.

\*     \*     \*     \*     \*     \*

"Ladies and Gentlemen, the State has presented to you all of its evidence. We've tried to give you a complete and whole picture of this case. It's cut up, obviously. Testimony gets chopped up and it's a hard business to try and straighten it all out and make sense of it. But in this particular case, we have given you overwhelming evidence that Linnea Cheatham died as the result of a severe and brutal beating administered to her by the Defendant, by that man seated right there (indicating).

"The Defense is attempting to muddy the waters by injecting confusing and conflicting testimony about those falls on a dance floor and by the use of a pathologist who had second-hand knowledge of this case and comes in and, basically, says, 'Well, Valium and alcohol had a factor in this woman's death.' We ask you to use your common sense in evaluating the evidence. How many people die as the result of slipping on a dance floor?"

In reaching a conclusion with respect to whether there was an impermissible com-

ment upon the defendant's exercise of his right of silence we must consider the closing argument in its entirety, and we are not permitted to take sentences and phrases out of context, as are the excerpts quoted by the appellant. *Wheeler v. State,* Wyo., 691 P.2d 599 (1984).

■ Immediately before the statement that the participants in the trial did not know exactly what had happened at the Cheatham house on the night in question, the prosecutor said that he wanted to review the evidence presented and he did then proceed to discuss what had happened before and after the incident. He stated that the evidence of what occurred in between those two times was not as clear because only the victim and Cheatham had been present. He then pointed out that Cheatham's versions of the incident were before the jury in the form of the statements he had made to others. He went on to emphasize what Cheatham had said about the incident instead of calling attention to his failure to testify at trial. In context the statements about which Cheatham complained were not "manifestly intended or of such character that the jury would naturally and necessarily" accept them as comments relating to Cheatham's exercise of his right of silence. Instead these statements were a comment upon the relative paucity of evidence surrounding the occurrences in the home. It is apparent that these statements were not intended to focus attention upon Cheatham's failure to testify, and they were not an impermissible comment upon his exercise of his right of silence. *Oldham v. State,* supra.

■ Cheatham also argues that the prosecutor's statement that he was trying to muddy the waters and inject confusion "were an obvious attempt * * * to remind the jury that Appellant had not testified." We are not persuaded that those statements and argument even remotely call attention to Cheatham's failure to testify. When the prosecutor argued that Cheatham was trying to muddy the waters he was rebutting Cheatham's theories that valium and alcohol, or a fall on the dance

floor, or a combination of those circumstances caused his wife's death. It is obvious that the references to confusion and muddying the waters alluded to Cheatham's theories, not his exercise of his right of silence.

■ The prosecutor did make one reference to a lack of evidence. What followed, however, was simply a reiteration of Cheatham's several versions of the incident. Given the context in which that comment was made, we conclude that it did not constitute a comment upon the exercise of Cheatham's right of silence.

The necessity for the comment to impact upon the exercise of an accused's person's right of silence can be traced back to the decisions of the Supreme Court of the United States in which the rule upon which Cheatham relies has been developed. *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983) and *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976). Those decisions, together with *Wainwright v. Greenfield,* —— U.S. ——, 106 S.Ct. 634, 638, 639, 88 L.Ed.2d 623 (1986) articulate the proposition that the vice in such a situation is the natural assumption that an innocent person will explain or justify his conduct, and, therefore, one who offers no explanation may be considered as not having any valid explanation to offer. The Supreme Court of the United States then has made it clear that any error in commenting on the failure to speak is founded primarily upon the assurances that are given to an accused as a part of his advice with respect to his constitutional rights in accordance with *Miranda v. Arizona,* supra. Once those warnings have been given, one cannot discern whether the failure to speak is due to the exercise of the constitutional rights or may be attributed to the fact that no explanation exists. The Supreme Court of the United States has held that one cannot justifiably raise an inference from the failure to speak arising out of such an equivocal circumstance. *Gomez v. State,* Wyo., 718 P.2d 53 (1986) and cases cited therein. It is readily seen that the problem which

the Supreme Court of the United States has identified had no relationship to the situation shown by the closing arguments in this trial.

In his final assertion of error Cheatham argues that there was not sufficient evidence to sustain his conviction. He does not content himself with simply arguing the overall insufficiency of the evidence, but he points specifically to two defects. First Cheatham argues that there was no evidence that he acted without malice, and, since one element of the crime of involuntary manslaughter is the absence of malice, the state has failed to prove a violation of the statute. His second argument is that the jury was required to accept his version of the incident in the home in accordance with *Eagan v. State,* 58 Wyo. 167, 128 P.2d 215 (1942), and, given that requirement, the state has no evidence of the other elements of the crime of involuntary manslaughter.

■ Cheatham's assumption that an essential element of the crime of involuntary manslaughter is the absence of malice is not well founded. Those words in the statute were adopted to distinguish involuntary manslaughter from the more serious crimes of homicide. They do not have the effect of making absence of malice an essential element of the crime.

> "[T]he descriptive phrase in the statute is simply a way of saying that the element of malice required for murder in the second degree and also murder in the first degree is not required. Consequently, it is not a true element of the defense of voluntary manslaughter. * * *"
> *Jahnke v. State,* Wyo., 692 P.2d 911, 919 (1984).

Addressing the same proposition the Supreme Court of Michigan said:

> " '[W]ithout malice' is the absence of an element, rather than an additional element which the people must prove beyond a reasonable doubt. * * * While the absence of malice is fundamental to manslaughter in a general definitional sense, it is not an actual element of the crime itself * * *." *People v. Doss,* 406 Michigan 90, 276 N.W.2d 9, 12 (1979).

Cheatham also argues that under the rule announced in *Eagan v. State*, supra, his explanation of the circumstances leading to his wife's death could not arbitrarily be rejected by the jury because he was the sole surviving witness and his version of the events was uncontradicted. Cheatham's version of the injuries, substantially capsulized, was that his wife received those injuries from falling while dancing, a fall down some stairs at the home, and from being pushed against a door. Cheatham relies upon this language from the opinion in *Eagan v. State*, supra:

"Where an accused is the sole witness of a transaction charged as a crime, as in the case at bar, his testimony cannot be arbitrarily rejected, and if his credibility has not been impeached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted." *Eagan v. State*, supra 128 P.2d at 226.

■ Cheatham's reliance on these propositions is misplaced because the statement which he quotes has inherent limitations. First, "the rule applies to testimony by an accused." *Cutbirth v. State*, Wyo., 663 P.2d 888, 890 (1983). Cheatham did not testify in this case. Instead his version of the incident was related through various other witnesses in the form of the statements he had made to them. Even if this evidence were considered to be testimony by the accused, "[T]he *Eagan* rule is helpful to a defendant only in those circumstances where his explanation remains uncontradicted, either directly or by fair inference from testimony and evidence." *Cutbirth v. State*, supra, 663 P.2d at 890. This court has held that the Eagan rule is inappropriate in an instance in which the testimony of the accused was inconsistent not only with the circumstantial evidence but also internally inconsistent because of various versions of the story that he related. *Gore v. State*, Wyo., 627 P.2d 1384 (1981).

■ In this instance Cheatham's version was contradicted. One hundred eighteen bruises were counted on the victim's body when the autopsy was performed, but the preceding morning she had only one bruise. The pathologist testified that the injury was not consistent with her head hitting a flat object such as a wall or a floor. This evidence and inferences fairly drawn therefrom contradicted Cheatham's version of the source of the injuries. Furthermore, Cheatham's version was contradicted by his earlier stories in which he told one witness that he had killed his wife and stated to another that he had vigorously assaulted her. Given these circumstances Cheatham is foreclosed from reliance upon the application of *Eagan v. State*, supra.

Cheatham does claim generally that the evidence is insufficient to support the required finding that he caused his wife's death. He points to the fact that her death was due to aspiration, the ultimate result of a subdural hematoma which could have been caused by a blow to the head which he inflicted or by falling on the dance floor earlier in the evening. He contends that the evidence is insufficient because either of these actions could have caused his wife's subdural hematoma. Cheatham fails to take account of the testimony by the pathologist that the injury corresponding with the hematoma was more consistent with a number of direct blows than with a fall. The pathologist testified that there appeared to be at least two blows which caused the injury, and those blows were not caused by a flat surface such as a wall or floor, but rather by an irregular object such as a fist. The testimony of another expert was offered to show that the aspiration resulting in death might have been due to the blow suffered in a fall or to the wife's ingestion of valium and alcohol. This left a conflict in the evidence which our system requires the jury to resolve. *Russell v. State*, Wyo., 583 P.2d 690 (1978); *Fresquez v. State*, Wyo., 492 P.2d 197 (1971).

The question which Cheatham then raises before this court is whether the evidence is sufficient to sustain the jury's verdict. We have said that the sufficiency of the

evidence in a criminal case must be evaluated by the established concept that whenever the appellant in a criminal case challenges the sufficiency of the evidence, the duty of this court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict. *Broom v. State*, Wyo., 695 P.2d 640 (1985). Viewed in this light, the testimony of the state's pathologist, that the hematoma which caused the wife's death resulted from blows to the head from an irregular object, must be accepted as true. Based upon this and other evidence which we have discussed the jury was justified in finding that blows inflicted by the appellant were the cause of the wife's death.

There were no defects in the institution of this criminal proceeding or in the information in the district court which had the effect of depriving the district court of jurisdiction, and because lack of jurisdiction was not demonstrated, the defects were waived by Cheatham's failure to raise them prior to plea in accordance with Rule 16(b)(2), W.R.Cr.P. No evidence was admitted in violation of Cheatham's right to effective representation by counsel, and the prosecution made no comment upon Cheatham's exercise of his right to silence. Viewed in accordance with the appropriate test the evidence was sufficient to sustain the jury's finding of guilty of the crime of involuntary manslaughter. The judgment and sentence of the district court is affirmed.

ROONEY, J., filed a specially concurring opinion.

ROONEY, Justice, specially concurring.

I agree with most of that said in the majority opinion, but again I must disagree with the contention that there was *no* comment by the prosecutor on appellant's constitutional right to silence. When the prosecutor told the jury,

" * * * [w]e don't know exactly what happened in the Cheatham house on April 15, 1984. There are only two people that knew what happened during

those early morning hours: Linnea Cheatham, who, obviously, couldn't testify here; and the Defendant,"

the comment was strong and direct in pointing out that appellant did not testify—that he exercised his constitutional right to silence.

Again, when the prosecutor emphasized that we have "the Defendant's version through his discussions with the police; his actions on April 15, 1984; and his statement to the officers that he made on April 15, 1984," the unspoken conclusion question, "Why didn't he get on the stand and give his version directly to you?" is obvious. The impermissible comment is definite.

In my dissent in *Gomez v. State*, Wyo., 718 P.2d 53 (1986), I noted the impropriety of an attempt to lessen the hamstring put upon the prosecution by the holdings in *Richter v. State*, Wyo., 642 P.2d 1269 (1982), and *Westmark v. State*, Wyo., 693 P.2d 220 (1984), to the effect that any comment on silence was per se reversible error by interpreting plain language amounting to such comment as being other than what it says and, therefore, not being a comment on silence. To repeat that said in Gomez has no purpose here.

I simply refer to that said in Gomez as being applicable to this case. The impermissible comment was here made.

As in Gomez, I find such comment to have been harmless error. Taken in context and with the overwhelming evidence against appellant, there was no reasonable possibility that the verdict would have been more favorable to appellant if the impermissible comment had not been made. Under the law set forth in Gomez, the comment in this case was harmless error, and I concur with the result reached by the majority on that basis.